**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Yield10 Bioscience, Inc., *et al.*, | Case No. 24-12752 |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF: (I) AN ORDER (A) APPROVING FORM
AND MANNER OF NOTICES AND (B) SCHEDULING A SALE HEARING AND
ESTABLISHING DATES AND DEADLINES RELATED THERETO, INCLUDING
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (II)
AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS, (B) GRANTING THE BUYER THE PROTECTIONS
AFFORDED TO A GOOD FAITH BUYER, AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of: (a) an order, substantially in the form attached hereto as

**Exhibit A** (the "Sale Notice Order"),[2] (i) approving the Debtors' proposed form of notice of the

hearing to approve the proposed sale of substantially all of the Debtors' assets (such assets,

collectively, the "Purchased Assets") and (ii) scheduling a sale hearing (the "Sale Hearing") and

certain dates and deadlines related thereto; and (b) an order, substantially in the form attached

hereto as **Exhibit B** (the "Sale Order"), (i) authorizing the sale of the Purchased Assets to Nuseed

Nutritional US Inc. ("Nuseed" or "Buyer") or to any affiliate thereof designated in accordance

---

[1]  The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Yield10
Bioscience, Inc. (x8289), (ii) Yield10 Bioscience Securities Corp. (x7435), and (iii) Yield10 Oilseeds Inc. (Canadian
Business No. x9469). The Debtors' mailing address is 19 Presidential Way, Suite 201, Woburn, MA 01801.

[2]  The Debtors will seek approval of the Sale Notice Order and the form and manner of the proposed Sale Notice at the
First Day hearing conducted in this matter.  Such relief is procedural only, and does not affect any party's substantive
rights.

with the APA (defined below) free and clear of all liens, claims, encumbrances, and other interests, pursuant to that certain Asset Purchase Agreement substantially in the form attached as Exhibit 1 to the Sale Order (together with certain documents ancillary thereto, the "<u>Asset Purchase Agreement</u>"), (ii) granting the Buyer the protections afforded to a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, (iii) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "<u>Contracts</u>," and the non-Debtor counterparties thereto, the "<u>Contract Counterparties</u>") pursuant to the Asset Purchase Agreement, and (iv) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

## <u>Preliminary Statement</u>

1.     As more fully explained in the First Day Declaration filed contemporaneously herewith, Yield10 was reincorporated in Delaware in 2017 with a new goal of using the oilseed Camelina as a development tool to discover novel gene traits for improving crop yield and as a platform crop for developing and commercializing (i) *Camelina sativa* seed oil that has been genetically engineered to enable production of high levels of certain types of omega-3 fatty acids and (ii) *Camelina sativa* seed oil for use as a low-carbon intensity feedstock oil for biofuels. Beginning in 2020 the company narrowed its focus to developing Camelina sativa for the production of biofuel feedstock and omega-3 oils. Since that time, however, the Debtors faced financial and market challenges that ultimately prevented the Debtors from achieving their operational goal as a revenue generating business. As a result, the Debtors retained experienced restructuring and other advisors to facilitate their review, analysis, and development of potential alternatives. The Debtors had outreach to multiple potential partners and potential acquirers, including players along the oilseed value chain: seed companies, grain processing companies,

biofuel producers and multiple players in the omega-3 nutrition business.[3]  No party came forward with a formal expression of interest in the acquisition of either Yield10 or it assets. There were indications of potential interest but when pressed for a formal offer no party except Nuseed[4] was willing to and did move forward.

2.      The Debtors and Nuseed entered into the Original Agreement (defined below) on October 1, 2024.  Because Yield10 is a public company the Original Agreement was subject to approval by a majority of Yield10's common shareholders. To finance operations pending stockholder approval, the Debtors borrowed $3 million from Nuseed pursuant to a Secured Promissory Note (the "Promissory Note"). The $3 million was fully funded. Repayment of the Promissory Note was secured by a security interest in and lien upon substantially all of the Debtors' assets.  The Promissory Note, as amended, was due and payable on December 2, 2024. Unfortunately, many holders of Yield10 common stock held a very small number of shares. Although the vast majority of those shareholders who voted, supported the asset sale (~5:1 in favor), due to voter apathy, the requisite percentage of stockholder approval was not achieved.

3.      After Yield10 failed to achieve the necessary stockholder approval to close the Original Agreement, it was left it in a precarious financial position. The Debtors lacked sufficient funds to pay the Promissory Note at maturity, and the Debtors' failure to obtain the necessary stockholder approval meant Nuseed could exercise its right to foreclose on the Purchased Assets as of December 2, 2024. The Debtors also lacked sufficient cash to pay rent going forward at their headquarters located in Woburn, Massachusetts where they stored much of the Purchased Assets.[5]

---

[3] A list of the outreach parties is attached to the First Day Declaration.

[4] Nuseed is not an insider and the Original Agreement to acquire the Purchased Assets was the result of an arm's length negotiation.

[5] Equipment and biological materials were removed from the Woburn facility are now being stored at Tobin Scientific (Beverley, MA). A deposit has been paid and a monthly fee is due going forward.

4.      The Debtors and Nuseed engaged in good faith discussions to resolve their respective business issues.  Together, they achieved a consensual path forward that is both a value-maximizing proposition for Yield10 and its residual stakeholders and allows Nuseed to acquire the Purchased Assets without stockholder approval or much further delay.  The Original Agreement was revised and the need to secure stockholder approval was deleted as a condition to closing.  The revised APA instead requires a private bankruptcy sales process to be completed within 35 days of the Petition Date; *i.e.,* January 10, 2025, and the certainty of protections contained in a Sale Order approved by this Court.

5.      A private sale is appropriate under these unique circumstances and the proposed time line is reasonable.  It is respectfully submitted that there is no viable, value-maximizing transaction for the Debtors other than the private sale to Nuseed.  In any event, there is no cash available to run a marketing process for the Purchased Assets.  Given the unique nature of the Purchased Assets, and the process that the Debtors already engaged in, there is little prospect that another purchaser will emerge except Nuseed.  And any hypothetical process is not feasible because Nuseed holds a secured Note and lien on the Debtors' assets.  And even if Nuseed did not foreclose, Nuseed holds a material advantage in any sales process, given its rights under the secured Promissory Note and sections 363(k) and (f) of the Bankruptcy Code. The revised APA also contains a 35-day deadline from the Petition Date to consummate the sale with Nuseed.

6.      As a result, the Debtors do not believe that the cost and delay arising from an auction process or pursuing a potential transaction with an entity other than Nuseed would either be feasible or reasonably likely to increase value for the Debtors and their estates.   Parties in interest should take comfort in the fact that pre-petition the Debtors conducted a search, and Nuseed was the only buyer that emerged that was ready, willing and able to consummate a sale.

The Debtors respectfully submit that it is an exercise of their sound business judgment to sell the Purchased Assets to Nuseed pursuant to the revised APA via a private sale. That will avoid foreclosure and will maximize the value of these assets for the benefit of all creditors and clear the way for the Debtors to complete their liquidation in the context of chapter 11. Also, as part of the revised APA, Nuseed, as the Debtors' largest and only secured creditor, has no objection to proceeding this way. Accordingly, the Debtors respectfully request that the Court enter the proposed orders approving the Sale Notice, the revised APA and the transactions contemplated thereby.

## **Jurisdiction**

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(a), 365(b), 365(e), and 365(f) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002(a)(2), 2002(c)(1), 6004(a), 6004(c), 6004(f), and 6004(h) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 6004-11 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## **Relief Requested**

10.     The Debtors seek entry of: (a) an order (i) approving the Debtors' proposed form and manner of notice of the Debtors' proposed sale and assumption and assignment of the Debtors' executory contracts and unexpired leases; (ii) scheduling a sale hearing and certain dates and deadlines related thereto; and (b) an order (i) approving the sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests to the extent set forth in the APA and pursuant to section 363(b)(1) and 363(f) of the Bankruptcy Code, (ii) granting the Buyer the protections afforded to a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, (iii) approving procedures for the assumption and assignment of Contracts, and (iv) granting certain related relief.

### Background

11.     On December 6, 2024 (the "Petition Date"), the Debtors commenced their respective bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors are continuing in possession of their respective properties and are operating their respective businesses, as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

12.     A detailed description of the Debtors, their business and the events leading up to the bankruptcy filing is set forth in the First Day Declaration.

## The Debtors' Prepetition Marketing Efforts

13.     The Debtors' pre-petition restructuring efforts are more fully described in the its Definitive Proxy Statement filed with the Securities and Exchange Commission ("SEC") on October 16, 2024 and attached as an exhibit to the First Day Declaration.

## The Asset Purchase Agreement[7]

14.     As discussed more fully in the First Day Declaration and the APA, and as summarized in the chart below, the Debtors propose to enter into a transaction whereby the Buyer will acquire substantially all of the Debtors' Purchased Assets.  The following chart summarizes the terms and conditions of the proposed sale and discloses certain information required pursuant to Local Rule 6004-1(b).

| Term | Description |
|---|---|
| **Sellers** | Debtors Yield10 Bioscience, Inc. and Yield10 Oilseeds Inc. |
| **Buyer** | Nuseed Nutritional US Inc. |
| **Purchased Assets** | Substantially all of the Debtors' Assets.  APA. § 1.01. |
| **Purchase Price** | The aggregate purchase price to be paid by Buyer for the Purchased Assets shall consist of (i) the Estimated Closing Consideration Amount and (ii) the Post-Closing Consideration, subject to adjustment pursuant to **Error! Reference source not found.**, plus the assumption of the Assumed Liabilities (the "Purchase Price").  APA § 1.05. The outstanding balance of the Promissory Note and all cure costs for Assigned Contracts will be paid out of the proceeds otherwise payable to Sellers. APA $ 2.01(b) |
| **Sale to Insider**<br><br>**LR 6004-1(b)(iv)(A)** | No.  Nuseed has no relationship to Debtors. |
| **Agreements with Management** | No. |

---

[7] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the revised APA.  To the extent that the following summary and the terms of the Asset Purchase Agreement conflict, the terms of the Asset Purchase Agreement shall control.

| | |
|---|---|
| **LR 6004-1(b)(iv)(B)** | |
| **Releases** <br><br> **LR 6004-1(b)(iv)(C)** | No. |
| **Private Sale / No Competitive Bidding** <br><br> **LR 6004-1(b)(iv)(D)** | Yes. The proposed transaction involving the sale of the Purchased Assets to the Buyer does not contemplate an auction. Pursuant to Local Rule 6004-1(b)(iv)(D), the business justifications for the private sale of the Purchased Assets to the Buyer is set forth herein and in the First Day Declaration.  APA. § 5.18 (d). |
| **Closing Conditions/Termination Provisions** <br><br> **LR 6004-1(b)(iv)(E)** | Closing Conditions are set forth in APA § 6.01 – 6.03 <br><br> Termination Provisions are set forth in APA § 7.01 – 7.03 |
| **Good Faith Deposit** <br><br> **LR 6004-1(b)(iv)(F)** | None.  Except Buyer already extended $3 million in credit pursuant to the Promissory Note.  Repayment of the Promissory Note is secured by a lien on substantially all of the Debtors' assets. |
| **Interim Arrangements with Proposed Buyer** <br><br> **LR 6004-1(b)(iv)(G)** | To facilitate the Sale, and because Debtors lack sufficient funds, Buyer has entered into a Services Agreement to maintain the status quo of the Assets pending closing. |
| **Use of Proceeds** <br><br> **LR 6004-1(b)(iv)(H)** | None. |
| **Tax Exemption** <br><br> **LR 6004-1(b)(iv)(I)** | None. |
| **Record Retention** <br><br> **LR 6004-1(b)(iv)(J)** | Until the cases close, the Buyer will provide the Debtors with reasonable access to books and records in connection with any dispute related to the APA and documents or information necessary to administer their estates. APA § 5.18 (c). |
| **Sale of Avoidance Actions** <br><br> **LR 6004-1(b)(iv)(K)** | No. See Excluded Assets; APA § 1.02(a)(ix).  Provided, however, avoidance actions against Contract Counterparties in connection with Assumed Contracts are required to be released by the estates. |
| **Successor Liability** | All of the Purchased Assets shall be sold free and clear of all liens, interests, and other encumbrances. APA at § 1.01. |

| | |
|---|---|
| **LR 6004-1(b)(iv)(L)** | |
| **Sale Free and Clear of Executory Contracts and Unexpired Leases**<br><br>**LR 6004-1(b)(iv)(M)** | The Asset Purchase Agreement requires the Debtors to transfer the Purchased Assets to the Buyer free and clear of all Interests. APA § 1.01. |
| **Credit Bid**<br><br>**LR 6004-1(b)(iv)(N)** | No. However, the secured claim of Buyer will be paid in full as an offset against the Purchase Price |
| **Relief from B.R. 6004(h)**<br><br>**LR 6004-11(b)(iv)(O)** | The parties must consummate the transaction with the Buyer within 35 days of the Petition Date. The Debtors, therefore, have requested a waiver of the 14-day stay under Bankruptcy Rule 6004(h). |

### Form and Manner of Sale Notice (First Day Relief Requested)

15.     Subject to entry of the Sale Notice Order, on or within three business days of entry of the Sale Notice Order, the Debtors will cause the notice, substantially in the form attached as **Exhibit 1** to the Sale Notice Order (the "Sale Notice") to be served on the following parties or their respective counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; Attn.: Richard Schepacarter; (b) the entities listed on the exhibit attached to the First Day Declaration that the Debtors met with in connection with a sale of their assets or other restructuring event; (c) counsel to Nuseed; (d) all Counter-Parties to Contracts; (e) all known holders of liens, claims, and other encumbrances secured by the assets constituting the Purchased Assets; (f) all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; (g) all known creditors of the Debtors, as reflected in the Debtors' books and records as of the Petition Date; (h) the SEC and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, (a) – (i), the "Notice Parties"). The Debtors respectfully submit that the

Sale Notice is reasonably calculated to provide interested parties with notice of the sale and Sale Hearing and an opportunity to respond accordingly.

## The Sale Hearing (First-Day Relief Requested)

16.    The Debtors request that the Court schedule the Sale Hearing on or before January 10, 2025; i.e., 35 days after the Petition Date.  The Debtors further request that the objection deadline with respect to the sale of the Purchased Assets (the "Sale Objection Deadline") be set at seven (7) calendar days prior to such hearing.

## Summary of Assumption and Assignment Procedures

17.    The Debtors are also seeking approval of procedures to facilitate the fair and orderly assumption and assignment of certain Contracts in connection with the sale. Notice of the proposed assumption and assignment of the Contracts to the Buyer pursuant to the Asset Purchase Agreement, the proposed cure amounts relating thereto, and the right, procedures, and deadlines for objecting thereto, are provided in the Sale Notice. Any objection to any proposed cure amount or assumption and assignment or an adequate assurance objection (each, a "Contract Objection") must: (a) be in writing; (b) state with specificity the nature of such objection and alleged cure amount, including applicable and appropriate documentation in support of such alleged cure amount; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules and be filed and served before the Sale Objection Deadline.

18.    If any timely filed Contract Objection cannot be resolved by the Buyer, the Debtors, and the objecting party with respect to such Contract Objection, the Court shall resolve such Contract Objection prior to assumption and assignment of such Contract, and upon entry of an order by the Court resolving such Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of entry of an order resolving such Contract Objection. To the extent

that any Contract Objection cannot be resolved by the parties, the hearing on the proposed assumption and assignment shall be adjourned until satisfactory resolution of the Contract Objection, to be determined in the Buyer's reasonable discretion.

**Basis for Relief**

**A.    The Court Should Approve the Sale of the Purchased Assets Pursuant to Section 363(b) of the Bankruptcy Code**

19.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of the estate should be authorized, courts in the Third Circuit generally authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *Meyers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

20.    Specifically, courts in this district have held consistently that the sale of estate assets outside the ordinary course of business is appropriate if: (a) there is a sound business purpose for the sale; (b) the proposed sale price is fair; (c) the debtor has provided interested parties with adequate and reasonable notice; and (d) the buyer has acted in good faith. *See, e.g., In re Exaeris, Inc.,* 380 B.R. 741, 744 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.,* No. 00-4459, 2002 WL 32332749, at *7-8 (D. Del. May 20, 2002). Moreover, if a valid business justification exists for the sale of property of the estate, a debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors ... acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting

*Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Hldgs., Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008) (stating that directors enjoy a presumption of honesty and good faith with respect to negotiating and approving a transaction involving a sale of assets). Parties objecting to the debtor's decision to sell property of the estate must make a showing of "bad faith, self-interest or gross negligence." *Integrated Res.,* 147 B.R. at 656; *see also In re Johns-Manville Corp.,* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Accordingly, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(l) of the Bankruptcy Code. For the following reasons, the Debtors respectfully submit that selling the Purchased Assets to the Buyer is a sound exercise of their business judgment.

21.     The Debtors respectfully submit that sound business reasons support their decision to enter into the Asset Purchase Agreement. First, the Debtors extensively sought solutions to their financial problems with third parties in the oilseed value chain. Those efforts resulted in a single buyer: Nuseed. Second, the only alternative to the proposed private sale is foreclosure by Nuseed in which case the Debtors and their estates will receive no value. Third, the transaction will enable the Debtors to expeditiously complete their chapter 11 liquidation and distribute sale proceeds to their residual stakeholders. Fourth, the Debtors lack sufficient cash and a meaningful runway to market the Purchased Assets. And even if they did, Nuseed could credit bid $3 million, the amount of the secured Promissory Note.

**B.      The Court Should Authorize the Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests Pursuant to Section 363(f) of the Bankruptcy Code**

22.     The Debtors also seek to sell the Purchased Assets free and clear of all liens, claims,

encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any interest in such property if:

> a.    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> b.    such entity consents;
>
> c.    such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> d.    such interest is in bona fide dispute; or
>
> e.    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements is sufficient to permit the sale of the Purchased Assets "free and clear" of liens and interests. *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); Decora, 2002 WL 32332749, at *7; *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) does not apply. See *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), ·2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001).

23.    The Debtors respectfully submit that section 363(f) is satisfied.  Accordingly, the Debtors request that the Purchased Assets be transferred to Nuseed free and clear of all liens, claims, security interests, and encumbrances.

**C.    The Court Should Grant the Buyer the Full Protections Afforded to a Good Faith Buyer Pursuant to Section 363(m) of the Bankruptcy Code**

24.    Section 363(m) of the Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit has stated that a good faith purchaser is "one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute a lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id. (citing In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978)).

25.     Here, there is no fraud or collusion between the Buyer and the Debtors. Before the execution of the APA, the Debtors conducted a search for a strategic buyer.  Nuseed is not an "insider," and the terms of the APA are the result of an arms' length transaction for value. Accordingly, the Debtors, in their sound business judgment, believe that sale of the Purchased Assets to the Buyer is in the best interests of their estates and that the proposed transaction should be approved by the Court pursuant to section 363(b) of the Bankruptcy Code.

26.     Accordingly, the Debtors request that the Court determine that the Buyer has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

**D.     <u>A Private Sale of the Purchased Assets is Appropriate Under Bankruptcy Rule 6004</u>**

27.     Bankruptcy Rule 6004(b) and Local Rule 6004-1 l(b)(iv)(D) permit a debtor to

conduct a private sale pursuant to section 363. Specifically, Bankruptcy Rule 6004(b) provides that "[ a]11 sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(b)(1) (emphasis added). *See In re Alisa P'ship,* 15 B.R. 802, 802 (Bankr. D. Del 1981) (holding that manner of sale is within the debtor's discretion); *In re Bakalis,* 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (stating that debtor has authority to conduct public or private sales of estate property).

28.    Accordingly, in light of Bankruptcy Rule 6004(b) and case law regarding section 363 sales, a debtor may conduct a private sale if a good business reason exists. See, e.g., *In re Pritam Realty. Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private· sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores. Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

29.    Indeed, courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(l) when there has been a valid business reason for not conducting an auction. See, e.g. *Buffets Holdings. Inc.*, No. 08-10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving the private sale of real property for approximately $2.4 million); I*n re W.R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman. Inc.*, No. 08-10595 (SMB) (Bankr.

S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex capable of converting recycled carpet into nylon engineered resins for $17.9 million); *In re W.R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line which designs and manufactures materials used in catalytic converters to remove pollutants produced by engines for approximately $22 million); *In re Solutia. Inc.*, No. 03-17949 (SCC) (Bankr. S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

30.     The Debtors submit that the proposed private sale of the Purchased Assets to the Buyer in accordance with the APA is appropriate in light of the facts and circumstances of these chapter 11 cases. Specifically, given the extent to which the Acquired Assets have already been marketed, there is no viable alternative, and the Debtors lack the resources and time to pursue an alternative, does not justify the costs and risks associated with delay.

31.     As a result, the transaction with the Buyer allows the Debtors to maximize the value of the Purchased Assets, provides a significant benefit to the Debtors' estates, and allows the Debtors to avoid foreclosure. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Debtors believe that the Buyer's offer is the highest and best offer for the Purchased Assets (indeed, the Debtors did not receive any other offer following a marketing process) the Debtors request that the Court approve the proposed private sale of the Purchased Assets to the Buyer in accordance with the Asset Purchase Agreement.

**E.      The Form and Manner of Notice of the Sale Should be Approved**

32.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Sale Hearing and the deadline for filing any objections to the relief requested herein. As noted above, within three business days of entry of the Sale Notice Order, the Debtors will serve the Sale Notice upon the Notice Parties.

33.     This notice is designed to provide notice of the Sale Hearing to as many interested parties as possible. Accordingly, the Debtors submit that service of the Sale Notice as provided for herein constitutes good and adequate notice of the sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.

**F.     The Assumption and Assignment of Contracts Should be Approved**

**a.     The Assumption and Assignment of the Contracts Reflects the Debtors' Reasonable Business Judgment.**

34.     Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign executory contracts and unexpired leases, subject to the approval of the Court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. The debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g., In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) (business judgment test "rather obviously presupposes that the estate will assume a contract only where doing so will be to its economic advantage."); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990) ("[T]he standard to be applied for approval of the assumption [of an executory contract] is the business judgment standard ….").

35.     The Court should approve the decision to assume and assign the Contracts in connection with the sale as a sound exercise of the Debtors' business judgment:

> First, the Contracts are necessary to run the Debtors' business and, as such, they are essential to Buyer making its best offer for the Purchased Assets.

> Second, it is unlikely that Buyer would proceed with the sale unless the Contracts, needed to conduct the business and manage the day-to-day operations, were included in the transaction.

> Third, the APA provides that the assumption and assignment of the Contracts is integral to, and inextricably integrated in, the sale.

{00040376. }

> <u>Fourth</u>, the Contracts will be assumed and assigned though the process approved by the Court pursuant to the Sale Order and, thus, will be reviewed by key constituents in these chapter 11 cases.

36.     The Sale Notice provides due and sufficient notice of the proposed assumption and assignment of the Contract to the Contract Counter-Parties and ample time to reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code.  As set forth in the Sale Order, the Debtors request that any party that fails to object to the proposed assumption and assignment of any Contract be deemed to consent to the assumption and assignment of the applicable Contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the cure amounts identified in the Sale Notice. *See, e.g.. In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor was deemed to have consented to sale by not objecting to sale motion).

37.     The Debtors believe that the assumption procedures are fair and reasonable, provide sufficient notice to the Contract Counterparties, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof. Accordingly, the Debtors request the Court approve the Assumption Procedures set forth in the Sale Order.

### b.     Defaults Under the Assumed Contracts Will Be Cured Through the Sale

38.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code: (a) that a debtor cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract; (b) compensate parties for pecuniary losses arising therefrom; and (c) provide adequate assurance of future performance thereunder. This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's

bargain." *Matter of Luce Indus., Inc.,* 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

39.    The Debtors submit that the statutory requirements of section 365(b)(l)(A) of the Bankruptcy Code will be satisfied.    Because the Sale Order (once approved) provides a clear process by which to resolve disputes over cure amounts or other defaults, the Debtors are confident that if defaults exist that must be cured, such cure will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code and with due respect to the rights of non-Debtor parties.

### c.    Non-Debtor Parties Will be Adequately Assured of Future Performance.

40.    Similarly, the Debtors submit that the third requirement of section 365(b)(l)(C) of the Bankruptcy Code-adequate assurance of future performance-is also satisfied given the facts and circumstances present here. "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case." *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

41.    The Debtors believe that they can and will demonstrate that the requirements for assumption and assignment of the Contracts to the Buyer will be satisfied. The Debtors believe that the Buyer has the financial wherewithal, willingness, and ability to perform under the Contracts proposed to be assigned. Further, the Assumption Procedures provides the Court and

other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Buyer to provide adequate assurance of future performance and object to the assumption of the Contracts or proposed cure amounts. The Court therefore should have a sufficient basis to authorize the Debtors to reject or assume and assign the Contracts as set forth in the Asset Purchase Agreement.

## **Satisfaction of Bankruptcy Rule 6004(h)**

42.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h). To maximize the value of the Purchased Assets and preserve the viability of Purchased Assets as a going concern, it is essential that the sale occur within the time constraints set forth in the Asset Purchase Agreement.  If the proposed sale transaction is not consummated on or before January 10, 2025, the Buyer will not pursue the transaction. The Buyer's failure to consummate the sale would prevent the Debtors' estates from realizing significant value from the proposed sale transaction. Therefore, the Debtors request a waiver of the 14-day stay period under Bankruptcy Rule 6004(h).

## **No Prior Request**

43.    No prior motion for the relief requested herein has been made to this or any other court.

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Sale Notice Order and the Sale Order, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, granting the relief requested herein and such other and further relief as the Court deems appropriate.

{00040376. }

Dated: December 6, 2024
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
Zhao (Ruby) Liu, Esq. (DE 6436)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
rosner@teamrosner.com
liu@teamrosner.com

*Proposed Counsel to Debtors and Debtors in Possession*