**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Yield10 Bioscience, Inc., *et al.*,[1] | ) | Case No. 24-12752 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: 132 & 133** |

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE AMENDED JOINT PLAN OF LIQUIDATION FOR DEBTORS

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner (DE #3995)
Zhao (Ruby) Liu (DE #6436)
Chan (Cora) Dong (DE #7393)
824 N Market Street, Suite 810
Wilmington, Delaware 19801
Tel.:   (302) 777-1111
Email: rosner@teamrosner.com
           liu@teamrosner.com
           dong@teamrosner.com

*Counsel to the Debtors and Debtors in Possession*

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Yield10 Bioscience, Inc. (x8289), (ii) Yield10 Bioscience Securities Corp. (x7435), and (iii) Yield10 Oilseeds Inc. (x9469).

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

I.    INTRODUCTION ............................................................................................... 1

II.   OVERVIEW OF THE PLAN ............................................................................. 1

III.  PLAN SOLICITATION AND VOTING ........................................................... 3

IV.   THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 1129. ....................................... 4

    A.   The Plan Complies with All Applicable Provisions of the Bankruptcy Code—11 U.S.C. § 1129(a)(1)........................................................................... 4

        1.   The Classification of Claims and Interests in the Plan Satisfies the Requirements of Bankruptcy Code Section 1122. ............................... 5

        2.   The Plan Satisfies the Requirements of Bankruptcy Code Section 1123(a)..... 6

        3.   The Plan Complies With the Requirements of Bankruptcy Code Section 1123(b). ...................................................................................... 8

            a.   The Plan's Discretionary Provisions are Consistent with Section 1123(b). ...................................................................................... 8

            b.   The Exculpation  and Injunction Provisions Should Be Approved. ... 10

    B.   The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code—11 U.S.C. § 1129(a)(2). ................................................... 14

    C.   The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law—11 U.S.C. § 1129(a)(3).................................................... 15

    D.   The Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval—11 U.S.C. § 1129(a)(4). .................................... 16

    E.   The Debtors Have Disclosed the Identity of Directors and Officers and the Nature of Compensation of Insiders—11 U.S.C. § 1129(a)(5)................................... 17

    F.   The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission—11 U.S.C. § 1129(a)(6)............................. 18

    G.   The Plan is in the Best Interests of Creditors —11 U.S.C. § 1129(a)(7)................... 18

    H.   The Plan Has Been Accepted by the Impaired Voting Class—11 U.S.C. § 1129(a)(8) 20

I.   Plan Provides for Payment in Full of All Allowed Priority Claims—11 U.S.C. § 1129(a)(9). .................................................................................................................... 20

J.   At Least One Impaired, Non-Insider Class Has Accepted the Plan—11 U.S.C. § 1129(a)(10). ................................................................................................................... 20

K.  The Plan is Feasible—11 U.S.C. § 1129(a)(11). ......................................................... 21

L.   All Statutory Fees Have or Will Be Paid—11 U.S.C. § 1129(a)(12). ........................ 22

M. The Plan Appropriately Treats Retiree Benefits—11 U.S.C. § 1129(a)(13) .............. 22

N.  Bankruptcy Code Section 1129(a)(14)–(16) Is Inapplicable. ..................................... 23

O.  The Plan Satisfies the "Cramdown" Requirements under Bankruptcy Code Section 1129(b) for Non-Accepting Classes............................................................................. 23

     1.   The Plan is Fair and Equitable. ....................................................................... 24

     2.   The Plan Does Not Unfairly Discriminate With Respect to Any Class. ........ 24

P.   The Plan Is Not an Attempt to Avoid Tax Obligations—11 U.S.C. § 1129(d). ......... 25

V.   CONCLUSION ...................................................................................................................... 26

4919-3036-9639, v. 1

## TABLE OF AUTHORITIES

**Cases**

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).................................................................................................................. 17

*Century Glove*, 1993 WL 239489, at *4 (D. Del. February 10, 1993) ........................ 15

*Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145 (Bankr. D. Del. 2002) ..................... 8

*Gruen Mktg. Corp. v. Asia Commercial Co., Ltd. (In re Jewelcor Inc.)*, 150 B.R. 580 (Bankr. M.D. Pa. 1992)................................................................................. 9

*Heartland Fed'n Sav. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160 (5th Cir. 1993).................................................. 4

*In re Alta+Cast, LLC*, No. 02-12982 (MFW), 2004 Bankr. LEXIS 219 (Bankr. D. Del. Mar. 2, 2004).......................................................................................... 4

*In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005)............................... 22

*In re Buttonwood Partners, Ltd.*, 111 B.R. 57 (Bankr. S.D.N.Y. 1990)...................... 24

*In re Coram Healthcare Corp.*, 271 B.R. 228 (Bankr. D. Del. 2001) ......................... 15

*In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) ........................... 5

*In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723 (Bankr. S.D.N.Y. 1991) ............................................................................................................. 18

*In re Elsinore Shore Assocs.*, 91 B.R. 238 (Bankr. D.N.J. 1988)............................... 14

*In re Exide Tech.*, 303 B.R. 48 (Bankr. D. Del. 2003)............................................. 4, 8

*In re Jersey City Med. Ctr.*, 817 F.2d 1055 (3d Cir. 1987)......................................... 5

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986) ............................ 24

*In re Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988)........................................ 24

*In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651 (D. Del. 2003) ...................... 22, 23

*In re NII Holdings, Inc.*, 288 B.R. 356 (Bankr. D. Del. 2002) ................................... 15

*In re Nutritional Sourcing Corp.*, 398 B.R. 816 (Bankr. D. Del. 2008)........................ 5

*In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005).................................................... 7

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) ................................................ 14, 15

*In re Resorts Int'l Inc.*, 145 B.R. 412 (Bankr. D.N.J. 1990) .................................................. 14, 16

*In re RNI Wind Down Corp.*, 348 B.R. 286 (Bankr. D. Del. 2006) ............................................... 12

*In re Rubicon U.S. REIT, Inc.*, 434 B.R. 168 (Bankr. D. Del. 2010) ........................................... 23

*In re Sea Launch Co., L.L.C.*, 2010 Bankr. LEXIS 5283, at *41 (Bankr. D. Del.
    July 30, 2010) .............................................................................................. 22

*In re Stone & Webster, Inc.*, 286 B.R. 532 (Bankr. D. Del. 2002) ............................................... 7

*In re Tribune Co.*, 464 B.R. 126  (Bankr. D. Del. 2011) .................................................... 4

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc.*, 987 F.2d 154 (3d
    Cir. 1993) ................................................................................................. 5, 22

*Kurak v. Dura Auto. Sys., Inc. (In re Dura Auto. Sys., Inc.)*, 379 B.R. 257 (Bankr.
    D. Del. 2007) .............................................................................................. 22

*Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491 (D.N.J. 2005) .............................. 16

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III
    Joint Venture)*, 995 F.2d 1274 (5th Cir. 1991) .................................................... 5

*U.S. Bank Nat'l Ass'n v. Wilmington Trust Co., Spansion, Inc. (In re Spansion,
    Inc.)*, 426 B.R. 114 (Bankr. D. Del. 2010) ........................................................ 11

**Statutes**

11 U.S.C. § 1122 .......................................................................................... 5, 6

11 U.S.C. § 1122(a) ..................................................................................... 5, 6

11 U.S.C. § 1123(a) ........................................................................................ 6

11 U.S.C. § 1123(a)(2) .................................................................................... 6

11 U.S.C. § 1123(a)(3) .................................................................................... 6

11 U.S.C. § 1123(a)(4) .................................................................................... 6

11 U.S.C. § 1123(a)(5) .................................................................................... 7

11 U.S.C. § 1123(a)(5)(C) ................................................................................ 7

11 U.S.C. § 1123(a)(6) .................................................................................... 7

11 U.S.C. § 1123(a)(7) ............................................................................................................ 8

11 U.S.C. § 1123(b) ............................................................................................................. 8, 9

11 U.S.C. § 1123(b)(3)(A) ................................................................................................. 8, 11

11 U.S.C. § 1123(b)(5) ............................................................................................................ 8

11 U.S.C. § 1123(b)(6) ............................................................................................................ 8

11 U.S.C. § 1125 ................................................................................................................... 14

11 U.S.C. § 1126 ................................................................................................................... 14

11 U.S.C. § 1126(c) ............................................................................................................... 19

11 U.S.C. § 1126(f) ........................................................................................................... 3, 19

11 U.S.C. § 1129 ..................................................................................................................... 4

11 U.S.C. § 1129(a) ............................................................................................................... 22

11 U.S.C. § 1129(a)(1) ........................................................................................................ 4, 5

11 U.S.C. § 1129(a)(10) ......................................................................................................... 20

11 U.S.C. § 1129(a)(11) ..................................................................................................... 20, 21

11 U.S.C. § 1129(a)(12) ......................................................................................................... 21

11 U.S.C. § 1129(a)(13) ......................................................................................................... 21

11 U.S.C. § 1129(a)(14) ......................................................................................................... 22

11 U.S.C. § 1129(a)(16) ......................................................................................................... 22

11 U.S.C. § 1129(a)(2) ........................................................................................................... 14

11 U.S.C. § 1129(a)(3) ...................................................................................................... 14, 15

11 U.S.C. § 1129(a)(4) ...................................................................................................... 15, 16

11 U.S.C. § 1129(a)(5) ...................................................................................................... 16, 17

11 U.S.C. § 1129(a)(5)(A) ...................................................................................................... 16

11 U.S.C. § 1129(a)(5)(A)(i) .................................................................................................. 16

11 U.S.C. § 1129(a)(5)(A)(ii) ................................................................................................ 16

4919-3036-9639, v. 1

11 U.S.C. § 1129(a)(5)(B) ................................................................................................ 16

11 U.S.C. § 1129(a)(6) ..................................................................................................... 17

11 U.S.C. § 1129(a)(7) .......................................................................................... 17, 18, 19

11 U.S.C. § 1129(a)(8) ................................................................................................ 19, 22

11 U.S.C. § 1129(a)(9) ..................................................................................................... 19

11 U.S.C. § 1129(b) ....................................................................................................... 22, 23

11 U.S.C. § 1129(b)(1) ..................................................................................................... 23

11 U.S.C. § 1129(b)(2) ..................................................................................................... 23

11 U.S.C. § 1129(b)(2)(B)(ii) ......................................................................................... 23

11 U.S.C. § 1129(b)(2)(C)(ii) ......................................................................................... 23

11 U.S.C. § 1129(d) .......................................................................................................... 24

11 U.S.C. § 507(a) ............................................................................................................ 19

28 U.S.C. § 1930 ............................................................................................................... 21

**Rules**

Fed. R. Bankr. P. 2002 ....................................................................................................... 4

4919-3036-9639, v. 1

## I.    **INTRODUCTION**

1.      On December 6, 2024 (the "Petition Date"), each of the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") their respective voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), commencing their chapter 11 cases (the "Chapter 11 Cases").    The Debtors have proposed the *Amended Joint Plan of Liquidation of Yield10 Bioscience, Inc. and Its Affiliate Debtors* [D.I. 132] (as may be amended, modified, or supplemented from time to time, the "Plan").[3]  The confirmation hearing on the Plan (the "Confirmation Hearing") is scheduled for October 14, 2025, at 11:30 a.m. (Eastern Time).   In connection with the Confirmation Hearing, the Debtors submit this memorandum of law (the "Memorandum") in support of entry of the Confirmation Order. This Memorandum addresses the requirements set forth in the Bankruptcy Code for confirmation of the Plan.  In support of this Memorandum and confirmation of the Plan, the Debtors are also filing the *Declaration of Zhao Liu of The Rosner Law Group LLC Regarding The Solicitation of Votes and Tabulation of Ballots on The Amended Chapter 11 Plan of Liquidation of Yield10 Bioscience, Inc. and Its Affiliate Debtors* [D.I. 160] (the "Voting Tabulation").  The sole Voting Class—Class 2 General Unsecured Claims—has voted in favor of the Plan, with 100% in number and 100% in amount.   Accordingly, the Debtors request confirmation of the Plan.

## II.   **OVERVIEW OF THE PLAN**

2.      The Plan is a plan of liquidation.  Pursuant to the Plan, the Debtors shall appoint a Plan Administrator, identified in the *Plan Supplement for The Amended Joint Chapter 11 Plan of*

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Plan. In addition, any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

*Liquidation of Yield10 Bioscience, Inc. and Its Affiliated Debtors* [D.I.153] as Mr. Olly People, who shall oversee the monetization of all Retained Causes of Action and vet all filed Proofs of Claim and Rejection Damages Claims resulting from the rejection of Executory Contracts or Unexpired Leases; provided, however, the Debtors have sought the appointment of an Independent Manager to review Proofs of Claims submitted by Insiders and review and, if appropriate, prosecute Avoidance Actions against Insiders.   The Plan Administrator will then, when prudent in accordance with his business judgement, make distributions to Holders of Allowed Class 2 Claims in accordance with the terms of the Plan. Holders of Allowed Administrative and Priority Claims   shall be paid on the Effective Date or when such claims become Allowed.

3.      The Plan divides the holders of Claims and Interests into four (4) Classes and sets forth the treatment for each Class.  The Classes take into account the differing nature and priority of the various Claims and Interests under the Bankruptcy Code.   The  Plan segregates various Claims and Interests in the Debtors into the following groups: Class 1 (Other Priority Claims); Class 2 (General Unsecured Claims); Class 3 (Intercompany Claims); Class 2 (Equity Interests).

4.      The Classes and their treatment under the Plan are further described as follows:

**A.  Allowed Other Priority Claims (Class 1)**

Unimpaired - Deemed to Accept Plan

**B.  Allowed General Unsecured Claims (Class 2)**

Impaired - Entitled to Vote on Plan

**C.  Intercompany Claims (Class 3)**

Impaired - Deemed to Reject

**D.  Equity Interests (Class 4)**

Impaired - Deemed to Reject

2

### III.    **PLAN SOLICITATION AND VOTING**

5.    On August 20, 2025, the Court entered the *Order (I) Approved Disclosure Statement; (II) Approved Solicitation and Voting Procedures, Including (A) Fixed The Voting Record Date, (B) Approved The Solicitation Package and Procedure for Distribution, (C) Approved The Form of The Ballot and Solicitation Materials and Establishing Procedure for Voting, and (D) Approved Procedures for Vote Tabulation; (III) Scheduled a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granted Related Relief* [D.I. 142] (the "Disclosure Statement Order").  In accordance with the Disclosure Statement Order, on August 22, 2025, the Debtors commenced the solicitation of votes to accept or reject the Plan from Holders of Claims in Class 2 (the "Voting Class") and mailed to the Holders of Claims in the Voting Class the following materials (collectively, the "Solicitation Packages"): (i) the Disclosure Statement Order; (ii) the Disclosure Statement and Plan; (iii) Notice of the Confirmation Hearing and Objection Deadline; and (iv) the Ballot.

6.    The Debtors did not solicit votes on the Plan from Holders of Claims in Classes 1, 3 and 4, which are Unimpaired and conclusively deemed to have accepted the Plan, or Impaired but deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(f) and 1126(g). However, in accordance with the Disclosure Statement Order, the  Disclosure Statement, Plan and the Notice of Confirmation Hearing and Objection Deadline were served on the following parties: (i) the Office of the United States Trustee; (ii) all persons or entities that filed a proof of Claim; (iii) all persons or entities listed on the Schedules as holding a Claim or potential Claim; (iv) the Securities and Exchange Commission and any regulatory agencies with oversight authority of the Debtors; (v) the Internal Revenue Service; (vi) the United States Attorney's office for the District of Delaware; (vii) all entities known to the Debtors to hold or assert a lien or other interest in the

Debtors' property; and (viii) any other parties that have requested notice pursuant to Bankruptcy Rule 2002.

7.     As evidenced by the certificates of service filed on August 29, 2025, the mailing of the Notice of Confirmation Hearing and Objection Deadline and the Solicitation Packages were served in accordance with the terms of the Disclosure Statement Order.

8.     As set forth in the Voting Tabulation, the Plan was accepted by the Voting Class.

## IV.   THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 1129.

9.     Bankruptcy Code section 1129 governs confirmation of a chapter 11 plan and sets forth the requirements that must be satisfied in order for a plan to be confirmed.  The Debtors bear the burden of establishing that all elements necessary for confirmation under Bankruptcy Code section 1129(a), if applicable, have been met by a preponderance of the evidence.[4]  This Memorandum, the Peoples Decl. and Voting Tabulation, demonstrate that, by a preponderance of the evidence, the Plan complies with the requirements of Bankruptcy Code section 1129(a) with respect to all Classes of Claims or Interests.  Accordingly, the Plan should be confirmed.

### A.   The Plan Complies with All Applicable Provisions of the Bankruptcy Code— 11 U.S.C. § 1129(a)(1).

10.     Bankruptcy Code section 1129(a)(1) provides that a court may confirm a chapter 11 plan only if such plan complies with applicable provisions of the Bankruptcy Code.  *See* 11

---

[4] *See In re Tribune Co.*, 464 B.R. 126, 151–52 (Bankr. D. Del. 2011) (explaining that the plan proponent bears the burden of establishing the plan's compliance with Bankruptcy Code section 1129(a) (*citing In re Exide Tech.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003))); *Heartland Fed'n Sav. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) (stating that the bankruptcy court must find that the debtor has satisfied the provisions of section 1129 by a preponderance of the evidence); *In re Alta+Cast, LLC*, No. 02-12982 (MFW), 2004 Bankr. LEXIS 219, at *5 (Bankr. D. Del. Mar. 2, 2004) (same).

U.S.C. § 1129(a)(1).[5]  A principal objective of section 1129(a)(1) is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan.  Accordingly, the determination whether the Plan complies with section 1129(a)(1) requires an analysis of the compliance with Bankruptcy Code sections 1122 and 1123.  As set forth below, the Plan complies with these sections of the Bankruptcy Code.

### 1. The Classification of Claims and Interests in the Plan Satisfies the Requirements of Bankruptcy Code Section 1122.

11.     Bankruptcy Code section 1122(a) provides that the claims or interests within a given class must be "substantially similar."[6]  Section 1122(a), however, does not mandate that "substantially similar" claims be classified together.[7]

12.     Courts have generally permitted the separate classification of substantially similar claims so long as the claims were not classified to "gerrymander" an accepting impaired class.[8] While gerrymandering claims to create an impaired accepting class is not permissible, section 1122 provides plan proponents with a great degree of flexibility in classifying claims and interests and

---

[5] The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123, which govern the classification of claims under the plan and the contents of the plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; *see also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).

[6] *See* 11 U.S.C. § 1122(a).

[7] *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (agreeing that section 1122 permits the grouping of similar claims in different classes); *In re Coram Healthcare Corp.*, 315 B.R. 321, 348 (Bankr. D. Del. 2004) (noting that "section 1122 . . . provides that claims that are not 'substantially similar' may not be placed in the same class; it does not expressly prohibit placing 'substantially similar' claims in separate classes").

[8] *See Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991) ("[T]hou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."); *see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc.*, 987 F.2d 154, 158 (3d Cir. 1993).

courts are offered broad discretion in approving a proponent's classification scheme and to properly consider the specific facts of each case before rendering a decision.[9]

13.     Article III of the Plan classifies four (4) Classes of Claims against and Interests in the Debtors, as described more fully in the Plan. In accordance with Bankruptcy Code section 1122(a), each Class of Claims against and Interests in the Debtors contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Moreover, the Plan's classification of Claims and Interests into four (4) Classes satisfies the requirements of Bankruptcy Code section 1122 because the Claims and Interests in each Class differ from the Claims and Interests in each other Class in a legal or factual nature or are based upon other relevant criteria.  In addition, valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims against and Interests in the Debtors under the Plan.  Based upon the foregoing, the Debtors submit that the Plan satisfies the requirements of Bankruptcy Code section 1122.

### 2. The Plan Satisfies the Requirements of Bankruptcy Code Section 1123(a).

14.     The Plan also complies with Bankruptcy Code section 1123(a), which sets forth seven (7) requirements for every chapter 11 plan.[10]  As demonstrated below, the Plan complies with each such requirement:

> (i)     Section 1123(a)(1).  Article III of the Plan properly designates all Claims and Interests that require classification, as required by Bankruptcy Code section 1123(a)(1).

> (ii)    Section 1123(a)(2)–(3).  Article IV of the Plan specifies whether each Class of Claims or Interests is Unimpaired or Impaired

---

[9] *See In re Jersey City Med. Ctr.,* 817 F.2d at 1060-61 ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case").

[10] *See* 11 U.S.C. § 1123(a).

under the Plan and the treatment of each Impaired Class, as required by Bankruptcy Code section 1123(a)(2)–(3).

(iii)    <u>Section 1123(a)(4)</u>. In accordance with Bankruptcy Code section 1123(a)(4), Article IV of the Plan provides the same treatment for each Claim or Interest in a given Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

(iv)    <u>Section 1123(a)(5)</u>. In accordance with Bankruptcy Code section 1123(a)(5), Article V of the Plan provides adequate means for the Plan's implementation.  For example, the Plan Administrator succeeds to all of the rights, powers and obligations of a trustee in bankruptcy with respect to collecting, maintaining, administering and liquidating the post-Effective Date estates. The Plan Administrator shall also act as the Disbursing Agent for the purpose of implementing the Plan. The Plan Administrator, in the exercise of the Plan Administrator's reasonable business judgment, will, in an expeditious, but orderly, manner, liquidate and convert to Cash the Post-Effective Date Assets, including monetizing all Retained Causes of Action including Avoidance Actions, and make distributions.

(v)    In addition, Article 5.2 of the Plan also proposes to substantively consolidate the Debtors' estates for Plan purposes only. The Debtors believe that such substantive consolidation is fair, appropriate, and necessary, and should be approved. [11] Substantive consolidation is appropriate with the consent of the parties, and here, the Plan has received support from the Voting Class entitled to vote to accept or reject the Plan. Moreover, substantive consolidation is appropriate here because observing the separate legal status of the individual Debtors would (i) add unnecessary expenses to the Debtors' Estates, thereby diluting recoveries and (ii) result in inequitable treatment of holders of Claims and Interests. [12] Accordingly, the Debtors believe that substantive consolidation for Plan purposes only is appropriate and that the Plan satisfies the requirements set forth in Bankruptcy Code section 1123(a)(5).

---

[11] Section 1123(a)(5)(C) "clearly authorizes a bankruptcy court to confirm a Chapter 11 plan containing a provision which substantively consolidates the estates of the two or more debtors." *In re Stone & Webster, Inc.*, 286 B.R. 532, 546 (Bankr. D. Del. 2002).

[12] *See In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) ("Substantive consolidation . . . emanates from equity [and] treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities.").

(vi)    <u>Section 1123(a)(6)</u>.  There are no equity securities being issued under the Plan and no charters being modified or approved as part of the Plan. Therefore, Bankruptcy Code section 1123(a)(6) is inapplicable to the Plan.

(vii)    <u>Section 1123(a)(7)</u>.  In accordance with section 5.4 of the Plan, Oliver P. Peoples was selected as Plan Administrator.  The Plan provides that the Plan Administrator shall be the representative of the post-Effective Date estates.  The Debtors submit that the Plan provisions governing the manner of selection of any officer, director, or trustee are consistent with the interests of creditors and equity security holders in accordance with Bankruptcy Code section 1123(a)(7).

**3.  The Plan Complies With the Requirements of Bankruptcy Code Section 1123(b).**

    a.    <u>***The Plan's Discretionary Provisions are Consistent with Section 1123(b).***</u>

15.    Bankruptcy Code section 1123(b) contains various discretionary provisions that may be included in a chapter 11 plan.[13]  For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases.  A plan also may include the settlement or adjustment of any claim or interest held by the debtor or the debtor's estate or provide for the debtor's retention and enforcement of any such claim or interest.[14]  Likewise, a plan may modify the rights of secured creditors or unsecured creditors, or leave unaffected the rights of creditors in any class of claims.[15]  Finally, a

---

[13] *See* 11 U.S.C. § 1123(b).

[14] *See* 11 U.S.C. § 1123(b)(3)(A), (B); *see, e.g., In re Exide Tech.*, 303 B.R. at 67 (Bankr. D. Del. 2003) (noting that 11 U.S.C. § 1123(b)(3)(A) permits settlements to be incorporated into a plan of reorganization); *Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 158-59 (Bankr. D. Del. 2002) (noting that 11 U.S.C. § 1123(b)(3)(B) permits a plan to retain causes of action by the debtor or representatives).

[15] 11 U.S.C. § 1123(b)(5).

plan may contain "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[16]

16.     In accordance with the Bankruptcy Code section 1123(b), the Plan employs various discretionary provisions, including the following:

> (i)    Article III provides that certain Class is Unimpaired and others are Impaired;
>
> (ii)   Article VIII provides for the rejection of all the Debtors' executory contracts and unexpired leases that are not expressly assumed or assumed and assigned except that D&O insurance shall "ride through" the Plan;
>
> (iii)  Articles VI establishes procedures for the settlement of Claims and the mechanics for distribution with respect to Allowed Claims;
>
> (iv)   Article X provides that the Court shall retain jurisdiction over the Chapter 11 Cases as specifically stated therein;[17] and
>
> (v)    as discussed further below, Article XI provides for: (a) a general injunction provision prohibiting all Entities from pursuing Claims in any manner, any action or other proceeding of any kind against Debtors; (b) an exculpation (the "Exculpation"); and (c) release by the Debtors (the "Debtor Release").

17.     The Debtors submit that the discretionary provisions contained in the Plan are reasonable and appropriate in light of the circumstances of the Chapter 11 Cases and permissible under Bankruptcy Code section 1123(b).

---

[16] 11 U.S.C. § 1123(b)(6).

[17] *See Gruen Mktg. Corp. v. Asia Commercial Co., Ltd. (In re Jewelcor Inc.)*, 150 B.R. 580, 582 (Bankr. M.D. Pa. 1992) ("There is no doubt that the bankruptcy court's jurisdiction continues post-confirmation to 'protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.'" (citations omitted)).

b.    ***The Exculpation and Injunction Provisions Should Be Approved.***

18.    The Exculpation and Injunction provisions are proper because, among other things, they are, in part, they are integral to the implementation of the Plan.  Such provisions are fair and equitable, and are in the best interests of the Debtors and their creditors.  Neither the Releases, the Exculpation, nor the Injunction is inconsistent with the Bankruptcy Code and, as a result, the requirements of Bankruptcy Code section 1123(b) have been satisfied.

19.    The principal terms of the Releases, Exculpation, and Injunction, as well as the basis for approval of these Plan provisions, are described below.  The Debtors submit that, based upon the circumstances and record of the Chapter 11 Cases and the paramount interest of creditors and other parties-in-interest, the Releases, Exculpation, and the Injunction should be approved.

i.    *Debtor Release (Plan § 11.3)*

20.    Pursuant to the Plan and subject to the terms thereof and the Confirmation Order, the Debtors (on their own behalf and as a representative of their respective Estates) will release certain entities that commonly are released in chapter 11 plans from all Claims and Causes of Action that have arisen prior to the Effective Date against such entities.  Specifically, the Debtor Release contained in Article 11.3, of the Plan provides:

> **On and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates and the Plan Administrator from any and all Claims, including any derivative claims asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Equity Interest in, a Debtor or other Entity, based upon, or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in or out-of- court restructuring efforts, intercompany transactions between or among a Debtor and any Other Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the**

**APA, or any Dissolution Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the APA, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on, or before, the Effective Date, except for any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct or gross negligence. For the avoidance of doubt, no Person or Entity shall be released from an Avoidance Action.**

**Notwithstanding anything to the contrary in the foregoing paragraph, the releases and discharges set forth above do not release any post-Effective Date obligations of any party or Entity under this Plan or any document, instrument, or agreement executed to implement this Plan and do not affect the rights of Holders of Allowed Claims to receive Distributions under this Plan.**

**Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the injunction, releases and exculpation provisions herein, which includes by reference each of the related provisions and definitions contained herein.[19]**

21.     The parties to be released by the Debtors are limited to pre- or post-petition critical participants in the reorganization effort or stakeholders.  Specifically, the Released Parties are:

**(a) the Debtors; (b) the Post-Effective Date Debtors; (c) the Plan Administrator; and (d) the Debtors' Representatives who served in such capacity on or after the Petition Date.[20]**

22.     The Plan represents a valid settlement pursuant to Bankruptcy Code section 1123(b)(3)(A) of whatever Claims any Debtor or any persons acting in the name of the Debtors may have against the Released Parties.  The Debtors have proposed these releases based on their

---

[19] *See* Plan § 11.3.

[20] *See* Plan § 1.93.

4919-3036-9639, v. 1

sound business judgment or the judgment of the Plan Administrator.[21] Indeed, the Debtors believe that pursuing claims against the Released Parties would not be in the best interest of the Debtors' various stakeholders, because the costs involved would likely outweigh any potential benefit to the Estates from pursuing such claims.

23.     Moreover, the efforts of the Released Parties were integral to the pre- or post-petition reorganization process.  Without this material consideration, the Debtors would have been subject to a foreclosure action by NuSeed pre-petition and there would be little or no return to general unsecured creditors.  In that case, the Debtors would have a chapter 7 case which, the Debtors believe, as discussed further below, would substantially reduce recoveries to Holders of Allowed Claims.

24.     The Debtors seek to release the Derivative Claims against their Released Parties. The proposed release of the Derivative Claims is appropriate and warranted for several reasons. First, upon the filing of a bankruptcy petition, any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and directors become property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vests exclusively in the trustee.  *In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006), *subsequently aff'd*, 359 F. App'x 352 (3d Cir. 2010) (internal citation omitted).  This is true regardless of whether the derivative action is brought prior to or after the filing of the petition.  *Id.* Second, there are no pending or threatened Derivative Claims.

---

[21] *See U.S. Bank Nat'l Ass'n v. Wilmington Trust Co., Spansion, Inc. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate.").

25.     For these reasons, and as will be demonstrated at the Confirmation Hearing, the Debtors' Release is justified, in the best interests of the Debtors and their Estates, and an integral part of the Plan, and should be approved.

*ii.     Exculpation (Plan § 11.2).*

26.     The Exculpation is narrowly tailored to protect Estate fiduciaries for their actions taken in furtherance of the Chapter 11 Cases. Specifically, Article 11.2 of the Plan provides:

> **Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any cause of action for any claim between the Petition Date and the Effective Date related to any act or omission in connection with, relating to, or arising out of, post-petition conduct within the Chapter 11 Cases, the Disclosure Statement, this Plan, the Asset Sale or any Dissolution Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the Asset Sale, post-petition conduct within the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**[27]**

27.     The Exculpated Parties have participated in the Chapter 11 Cases in good faith and the Exculpation is necessary to protect those Estate fiduciaries who have contributed to the Debtors' efforts to monetize assets and causes of action and plan efforts from collateral attacks related to their good-faith acts or omissions.  Further, the scope of the Exculpation is limited by law and has no effect on liability that is determined to have constituted actual fraud, willful misconduct, or gross negligence.  Accordingly, the Court should approve the Exculpation.

---

[27] *See* Plan § 11.2.

4919-3036-9639, v. 1

*iii.*        *General Injunction (Plan § 11.1)*

28.      Article 11.1 of the Plan generally provides that all Entities who have held, hold, or may hold Claims against the Debtors that arose on or before the Effective Date are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim. Such injunction shall extend to successors of the Debtor (including, without limitation, the Plan Administrator and the Post-Effective Date Assets).[28]   The injunction is necessary to preserve and enforce the Plan, the proposed Distributions, the Debtor's Releases and Exculpation and is tailored to achieve that purpose.  Accordingly, the Court should approve the general injunction as set forth in the Plan.

**B.**      **The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code—11 U.S.C. § 1129(a)(2).**

29.      Bankruptcy Code section 1129(a)(2) requires that the "proponent of the plan complies with the applicable provisions of this title."[29]  The legislative history of section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements

---

[28] *See* Plan § 11.1

[29] 11 U.S.C. § 1129(a)(2).

4919-3036-9639, v. 1

under Bankruptcy Code sections 1125 and 1126.[30] In determining whether a plan proponent has complied with this section, courts focus on whether the proponent has adhered to the disclosure and solicitation requirements of sections 1125 and 1126.[31]

30.     The Debtors have complied with all requirements set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Disclosure Statement and Plan. Accordingly, the requirements of section 1129(a)(2) have been satisfied.

## C.  The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law—11 U.S.C. § 1129(a)(3).

31.     Section 1129(a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[32] "The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'"[33] In determining whether a plan has been proposed in good faith, courts have recognized that they should avoid applying any hard and inflexible rules, but should instead evaluate each case on its own merits.[34]

---

[30] *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"); *see also In re Resorts Int'l Inc.*, 145 B.R. 412, 468-69 (Bankr. D.N.J. 1990); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 258 (Bankr. D.N.J. 1988).

[31] *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

[32] *See* 11 U.S.C. § 1129(a)(3).

[33] *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) (citations omitted).

[34] *See, e.g., In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002); *Century Glove*, 1993 WL 239489, at *4 (D. Del. February 10, 1993) (stating good faith should be evaluated in light of the totality of the circumstances surrounding confirmation); *In re PWS Holdings Corp.*, 228 F.3d at 243 (finding that plan was proposed in good faith).

32.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  The Debtors submit that the Plan represents a straight liquidation of all Retained Causes of Action and Avoidance Actions and is fundamentally fair to all stakeholders.  To ensure fairness, the Debtors are seeking authority to retain an Independent Manager to review claims submitted by Insiders and potential Avoidance Actions against Insiders.  Accordingly, the Plan has been filed in good faith and satisfies the requirements of Bankruptcy Code section 1129(a)(3).

**D.      The Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval—11 U.S.C. § 1129(a)(4).**

33.     Bankruptcy Code section 1129(a)(4) provides that a bankruptcy court shall confirm a plan only if "payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."[35]   Section 1129(a)(4) has been construed to require that all payments of professional fees paid from estate assets be subject to review and approval by the bankruptcy court as to the reasonableness of such fees.[36]

34.     In accordance with Bankruptcy Code section 1129(a)(4), no payment for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incidental to the Chapter 11 Cases, including pre-Effective Date Professional Fee Claims, has been or will be made by the Debtors other than payments that have been authorized by order of the Court.  Further, Article 2.4 of the Plan provides that Professional Fee Claims are subject to

---

[35] 11 U.S.C. § 1129(a)(4).

[36] *See, e.g., Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 503 (D.N.J. 2005); *In re Resorts Int'l, Inc.*, 145 B.R. at 476.

Court approval and the standards of the Bankruptcy Code.  Accordingly, the provisions of the Plan

comply with Bankruptcy Code section 1129(a)(4).

> **E.**    **The Debtors Have Disclosed the Identity of Directors and Officers and the Nature of Compensation of Insiders—11 U.S.C. § 1129(a)(5)**

35.    Bankruptcy Code section 1129(a)(5)(A) requires the proponent of any plan to

disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the

plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in

a joint plan with the debtor, or a successor to the debtor under the plan," and requires a finding

that "the appointment to, or continuance in, such office of such individual, is consistent with the

interests of creditors and equity security holders and with public policy."[37]  Additionally, section

1129(a)(5)(B) requires the proponent of a plan to disclose the "identity of any insider that will be

employed or retained by the reorganized debtor, and the nature of any compensation for such

insider."[38]  The Debtors have provided the information required under section 1129(a)(5) by

identifying Oliver P. Peoples, presently the Debtors' CEO for each of the Debtors, as the Plan

Administrator under the Plan, and the appointment of the Plan Administrator will be approved in

the Confirmation Order.  The Plan Administrator will be compensated at $375/hr.  Also, the Plan

contemplates the retention of an Independent Director[39] for the purpose of reviewing and dealing

with claims filed by and Avoidance Actions against Insiders.  Based upon the foregoing, the Plan

satisfies the requirements of Bankruptcy Code section 1129(a)(5).

---

[37] *See* 11 U.S.C. § 1129(a)(5)(A)(i)–(ii).

[38] *See* 11 U.S.C. § 1129(a)(5)(B).

[39] Toward that end, on September 23, 2025, the Debtors have filed their *Motion to Approve Debtors' Application for an Order, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, Appointing Edward T. Gavin, CTP, NCPM as an Independent Director of the Debtors* [D.I. 158]. As of the date hereof, the objection deadline has expired and no party has objected to the application.  A certificate of no objection has been filed. [D.I. 161].

**F.     The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission—11 U.S.C. § 1129(a)(6)**

36.    Bankruptcy Code section 1129(a)(6) requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its business approve any rate change under the plan.[40]  The Plan does not provide for any rate changes subject to the jurisdiction of any governmental regulatory commission.  Accordingly, the Debtors submit that Bankruptcy Code section 1129(a)(6) is inapplicable to the Plan.

**G.     The Plan is in the Best Interests of Creditors —11 U.S.C. § 1129(a)(7).**

37.    Bankruptcy Code section 1129(a)(7) requires that a plan be in the best interests of creditors.[41]  This "best interests" test focuses on individual dissenting creditors rather than classes of claims.[42]  The best interests test requires that each holder of a claim or equity interest either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code.[43]  If a class of claims or equity interests unanimously approves the plan, the best interests test is deemed satisfied for all members of that class.[44]  Under the Plan, Class 2 is Impaired.  The test, therefore, requires that each Holder of a Claim in Class 2 either accept the Plan or receive or retain under the Plan property having a present value, as of the effective date of the Plan, not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

---

[40] *See* 11 U.S.C. § 1129(a)(6).

[41] *See* 11 U.S.C. § 1129(a)(7).

[42] *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999).

[43] *See* 11 U.S.C. § 1129(a)(7).

[44] *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1991).

38.     The Debtors have satisfied section 1129(a)(7) with respect to Class 2.  Class 2 has accepted the Plan.  The Debtors are not seeking to require Holders of Class 2 to accept non-cash consideration so that the Debtors can preserve going-concern value.  The Debtors are liquidating their remaining assets.  During the course of these Chapter 11 Cases, the Debtors sold substantially all of their assets and, after such sales, the Plan proposes to reduce claims against the Estates and prosecute Retained Causes of Action including Avoidance Actions.  All monies received from such actions will be applied in accordance with the priorities of the Bankruptcy Code. The Debtors believe that the Holders of Allowed Claims will receive a better recovery and more quickly under the Plan, as compared to chapter 7 proceedings, given that the substantial additional administrative costs of chapter 7 cases will be avoided under the Plan and the substantial "learning curve" for any chapter 7 trustee.

39.     Additionally, a chapter 7 liquidation would likely result in an increase in Administrative Claims, because there would be an additional tier of Administrative Claims by the chapter 7 trustee and his or her professionals.  The chapter 7 trustee's professionals, including legal counsel and accountants, would add administrative expenses that would be entitled to be paid ahead of Allowed Claims against, or Allowed Interests in, the Debtors.

40.     For the reasons set forth above, the Debtors believe that the Plan provides a recovery greater and sooner than the recovery in a Chapter 7 for Holders of Allowed Claims.  The Plan, therefore, complies with Bankruptcy Code section 1129(a)(7) and meets the requirements of the "best interests" test.

4919-3036-9639, v. 1

**H.    The Plan Has Been Accepted by the Impaired Voting Class—11 U.S.C. § 1129(a)(8)**

41.    Bankruptcy Code section 1129(a)(8) requires that each class of claims and interests either has accepted or is not impaired under a chapter 11 plan.[45]  As indicated in Article III of the Plan, Class 1 is Unimpaired and is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Each Impaired Class of Claims and Interests entitled to vote to accept or reject the Plan has voted to accept the Plan pursuant to Bankruptcy Code section 1126(c).  In addition, Classes 3 and 4, which apply to all Debtors, were deemed to have rejected the Plan and, therefore, were not entitled to vote.  Class 2 – the sole Voting Class – has accepted the Plan.

**I.    Plan Provides for Payment in Full of All Allowed Priority Claims—11 U.S.C. § 1129(a)(9).**

42.    Bankruptcy Code section 1129(a)(9) requires that all claims entitled to priority pursuant to Bankruptcy Code section 507(a) be paid in full in cash unless the holders thereof agree to a different treatment.[46]  As required by Bankruptcy Code section 1129(a)(9), Article IV provides for full payment to all Holders of Administrative Claims and Priority Claims as described above.  The Plan meets the requirements of Bankruptcy Code section 1129(a)(9) with respect to Administrative Claims and the Priority Claims.  Each Holder of an Allowed Administrative Claim or Priority Claims shall receive payment in Cash in the amount of its Allowed Claim.

**J.    At Least One Impaired, Non-Insider Class Has Accepted the Plan—11 U.S.C. § 1129(a)(10).**

43.    Bankruptcy Code section 1129(a)(10) requires that at least one impaired class of claims must accept the plan, excluding the votes of insiders.[47] At least one Impaired Class of

---

[45] *See* 11 U.S.C. § 1129(a)(8).

[46] See 11 U.S.C. § 1129(a)(9).

[47] *See* 11 U.S.C. § 1129(a)(10).

Claims or Interests has accepted the Plan, excluding the votes of insiders. Class 2 has accepted the Plan discounting the votes of insiders. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(10).

**K.      The Plan is Feasible—11 U.S.C. § 1129(a)(11).**

44.      Pursuant to Bankruptcy Code section 1129(a)(11), a chapter 11 plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[48]  Pursuant to Bankruptcy Code section 1129(a)(11), the Court must determine, among other things, that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors or any successors to the Debtors under Plan (unless such liquidation or reorganization is proposed in the Plan).  These conditions are referred to as the "feasibility" of the Plan.

45.      The Plan is a liquidating plan and, accordingly, all of the Debtors' remaining Assets will be monetized and distributed to Holders of Allowed Claims pursuant to the terms of the Plan and, provided the Plan is confirmed and consummated, the Estates will no longer exist to be subject to future reorganization or liquidation.  The Plan adequately provides the means for the Debtors' liquidation.  The Plan provides for the Plan Administrator to make the necessary Distributions under the Plan.  The Plan is feasible because it: (i) provides the financial wherewithal necessary to implement the Plan; *i.e.*, the sale proceeds from the sale of substantially all of the Debtors' assets and (ii) offers reasonable assurance that the Plan is workable and has a reasonable likelihood of success.

---

[48] *See* 11 U.S.C. § 1129(a)(11).

4919-3036-9639, v. 1

46.     The Debtors have begun reconciling the claims register, and either has filed or will file omnibus objections to various claims, in advance of, or shortly after, the Confirmation Hearing. These filings are expected to reduce the amount of asserted General Unsecured Claims. Accordingly, the Plan satisfies the requirements of feasibility under Bankruptcy Code section 1129(a)(11).

### L.     All Statutory Fees Have or Will Be Paid—11 U.S.C. § 1129(a)(12).

47.     Bankruptcy Code section 1129(a)(12) provides that a court may confirm a chapter 11 plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."[49]  Article 2.5 of the Plan provides for the payment, on or before the Effective Date, of any fees due pursuant to section 1930 of title 28 of the United States Code or other statutory requirement.  Therefore, the Plan meets the requirements of Bankruptcy Code section 1129(a)(12).

### M.     The Plan Appropriately Treats Retiree Benefits—11 U.S.C. § 1129(a)(13)

48.     Bankruptcy Code section 1129(a)(13) requires that a chapter 11 plan provide for the continued payment of certain retiree benefits "for the duration of the period that the debtor has obligated itself to provide such benefits."[50]  The Debtors have no obligations to provide any such retiree benefits, and, accordingly, Bankruptcy Code section 1129(a)(13) is inapplicable to the Plan.

---

[49] *See* 11 U.S.C. § 1129(a)(12).

[50] *See* 11 U.S.C. § 1129(a)(13).

4919-3036-9639, v. 1

N.     **Bankruptcy Code Section 1129(a)(14)–(16) Is Inapplicable.**

49.     None of the Debtors are (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts.   Accordingly, Bankruptcy Code sections 1129(a)(14) through (16) are not applicable to the Plan.[51]

O.     **The Plan Satisfies the "Cramdown" Requirements under Bankruptcy Code Section 1129(b) for Non-Accepting Classes**

50.     Bankruptcy Code section 1129(a)(8) requires that each class of claims and interests either accept a plan or be unimpaired under the plan.[52] Here, the sole Voting Class has accepted the Plan, so the requirement of section 1129(a)(8) is met. Bankruptcy Code section 1129(b) provides that if all applicable requirements of section 1129(a) are met—notwithstanding a failure to comply with section 1129(a)(8)—a plan still may be confirmed so long as it does not discriminate unfairly and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan.

51.     Therefore, to confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan does not "discriminate unfairly" against, and is "fair and equitable" with respect to, the non-accepting impaired classes.[53]

52.     As the Voting Class voted to accept the Plan, the Classes to which cram down is relevant are the Classes that have been deemed to reject the Plan: Class 3 (Intercompany Claims) and Class 4 (Equity Interests).

---

[51] *See In re Sea Launch Co., L.L.C.*, No. 09-12153 (BLS), 2010 Bankr. LEXIS 5283, at *41 (Bankr. D. Del. July 30, 2010) ("Section 1129(a)(16) by its terms applies only to corporations and trusts that are not moneyed, business, or commercial.").

[52] *See* 11 U.S.C. § 1129(a)(8).

[53] *See, e.g., John Hancock Mut. Life Ins. Co.*, 987 F.2d at 157 n.5; *see also In re Armstrong World Indus., Inc.*, 432 F.3d 507, 512 (3d Cir. 2005); *Kurak v. Dura Auto. Sys., Inc. (In re Dura Auto. Sys., Inc.)*, 379 B.R. 257, 271–72 (Bankr. D. Del. 2007); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 660 (D. Del. 2003).

53.     As discussed below, the Plan may be confirmed as to each of these Classes pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

### 1.     The Plan is Fair and Equitable.

54.     Bankruptcy Code section 1129(b)(2) provides that the plan is fair and equitable with respect to a class of impaired unsecured claims or interests if, under the plan, no holder of any junior claim or interest will receive or retain property under the plan on account of such junior claim or interest.[54]

55.     Distributions under the Plan are made in the order of priority prescribed by the Bankruptcy Code and in accordance with the rule of absolute priority.  With respect to the Classes that are deemed to reject the Plan—Classes 3 and 4—no Claim or Interest junior to such Classes will receive a recovery under the Plan on account of such Claim or Interest.  Accordingly, the Plan is "fair and equitable" and, therefore, consistent with the requirements of Bankruptcy Code section 1129(b); provided, further, if Available Cash exists after satisfaction in full of Class 2 plus interest (unlikely), a procedures motion will be filed with the Court to make further distributions.

### 2.     The Plan Does Not Unfairly Discriminate With Respect to Any Class.

56.     Bankruptcy Code section 1129(b)(1) prohibits unfair discrimination with respect to any impaired class of claims or interests that has not accepted the plan.[55]  A plan unfairly discriminates in violation of Bankruptcy Code section 1129(b)(1) only if similar classes are treated differently without a reasonable basis for the disparate treatment.[56]  As between two classes of

---

[54] *See* 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).

[55] *See* 11 U.S.C. § 1129(b)(1).

[56] *See, e.g., In re Rubicon U.S. REIT, Inc.*, 434 B.R. 168, 175 (Bankr. D. Del. 2010) (noting that courts generally look to whether "[v]alid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan"); *In re Lernout & Hauspie Speech Prods.*, 301 B.R. at 660 ("The hallmarks

24

claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests,[57] or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment.[58]

57.     The Plan does not "discriminate unfairly" with respect to Classes 3 and 4, as the Plan does not provide any distributions to similarly situated claim or interest holders.  The Claims and Interests in Classes 3 and 4 are legally and factually distinct from other Claims and Interests in other Classes and are properly classified in separate Classes.  Class 3  contain Intercompany Claims.  Class 4 is the only Class that contains Equity Interests.  Therefore, the Plan does not unfairly discriminate with respect to any Impaired Class that did not accept the Plan.

**P.      The Plan Is Not an Attempt to Avoid Tax Obligations—11 U.S.C. § 1129(d).**

58.     Bankruptcy Code section 1129(d) provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities Act of 1933 (the "Securities Act").[59]  The Plan meets this requirement because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of the Securities Act, and no party in interest has filed an objection alleging otherwise.  The principal purpose of the Plan is to effectuate the Debtors' orderly liquidation through a Distribution mechanism that will maximize creditor recoveries.   Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(d).

---

of the various [unfair discrimination] tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination").

[57] *See, e.g., In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd, In re Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

[58] *See, e.g., In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990).

[59] *See* 11 U.S.C. § 1129(d).

4919-3036-9639, v. 1

## V.  <u>CONCLUSION</u>

59.     For the reasons set forth in this Memorandum, the Debtors respectfully request that the Court enter an order confirming the Plan in substantially the form of the proposed Confirmation Order the Debtors have filed concurrently herewith.

Respectfully Submitted,

Dated: October 9, 2025
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
Zhao (Ruby) Liu (DE #6436)
Chan (Cora) Dong (DE #7393)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
Email:  rosner@teamrosner.com
        liu@teamrosner.com
        dong@teamrosner.com

*Counsel to the Debtors and Debtors in Possession*