## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Yield10 Bioscience, Inc., *et al.*, | ) Case No. 24-12752 (MFW) |
|  | ) |
| Debtors.[1] | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: D.I. 132-1** |

### DECLARATION OF OLIVER P. PEOPLES IN SUPPORT OF CONFIRMATION OF THE AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR YIELD10 BIOSCIENCE, INC. AND ITS AFFILIATES

I, Oliver P. Peoples, under penalty of perjury in accordance with 28 U.S.C. § 1746, declare:

1.     I am the President and Chief Executive Officer of Yield10 Bioscience, Inc., a Delaware corporation ("Yield10"). Yield10 has two wholly-owned subsidiaries: (i) Yield10 Bioscience Securities Corp. (f/k/a Metabolix Securities Corp.), a Massachusetts corporation ("Securities Corp.") and (ii) Yield10 Oilseeds Inc., a company organized under the laws of Canada ("Oilseeds" and, collectively with Yield10 and Securities Corp., the "Debtors"). I am also the President of Securities Corp. and a director of Oilseeds. I have been intimately involved in the prosecution of these Chapter 11 Cases since their commencement. I make this declaration on behalf of the Debtors in support of confirmation of their *Amended Joint Chapter 11 Plan of Liquidation for Yield10 Bioscience, Inc. and Its Affiliates* dated August 18, 2025 [D.I. 132-1] (as may have been further amended and supplemented [D.I. 153], the "Plan").[3]

2.     I am authorized by the Debtors to submit this Declaration.  Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Yield10 Bioscience, Inc. (x8289), (ii) Yield10 Bioscience Securities Corp. (x7435), and (iii) Yield10 Oilseeds Inc. (x9469).

[3] All capitalized terms used but not defined herein are defined in the Plan.

review of relevant documents including, without limitation, the terms and provisions of the Plan, the Disclosure Statement, or my opinion based upon my expertise, experience and knowledge of the Debtors' business, financial condition and the events leading up to the bankruptcy filing. References to the Bankruptcy Code, the chapter 11 process and related legal matters are based on my understanding of such matters in reliance on explanations provided by, and advice of, counsel. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3.      Through consultation with the Debtors' counsel, I was involved in the formulation and drafting of the Plan.  To summarize, the Debtors' business was sold at a private Sale as part of the Chapter 11 Cases.  The Plan is a plan of liquidation that will distribute the net proceeds of the Sale to creditors holding Allowed Claims.  Toward that end, Claims must be reviewed and reduced, if appropriate, and Retained Causes of Action must be monetized.  Insider Claims and Avoidance Actions involving Insiders will be reviewed by an Independent Director.  All net proceeds will be distributed in accordance with the priorities of the Bankruptcy Code.  I am familiar with the Plan's provisions and I am aware that Bankruptcy Code § 1129 sets forth certain criteria that must be met for the Court to confirm the Plan.  I have reviewed these criteria and have reviewed the Plan with an eye toward them.  I offer the following testimony, made from personal knowledge, with respect to each of the factual criteria from Bankruptcy Code § 1129.

## I.    THE PLAN MEETS ALL STATUTORY REQUIREMENTS FOR CONFIRMATION

### A.  Classification of Claims (11 U.S.C. §§ 1122, 1123(a)(1))

4.      Article III of the Plan designates each Class of Claims and Equity Interests, as required by sections 1122 and 1123(a)(1) of the Bankruptcy Code.

5.      Under the Plan, the Debtors established four (4) Classes of Claims and Equity Interests for all purposes (including voting, confirmation and distribution pursuant to the Plan) of Claims, other than Administrative Expense Claims and Priority Tax Claims, against and Equity

2

Interests in the Debtors, based on the differences in the legal nature and/or priority of such Claims and Equity Interests, as follows:

    i.      Class 1:      Other Priority Claims

    ii.     Class 2:      General Unsecured Claims

    iii.    Class 3:      Intercompany Claims

    iv.    Class 4:      Equity Interests

6.    All Claims and Equity Interests within each particular Class have the same or substantially similar legal rights to the other Claims and Equity Interests in that same Class.  I am of the opinion, to the best of my knowledge and based on information provided by counsel for the Debtors, that valid, business, factual and legal reasons exist for the classification of Claims and Equity Interests created under the Plan, and the Debtors' classification of Claims and Equity Interests under the Plan (i) was not for the purpose of creating a consenting impaired Class under the Plan and (ii) does not discriminate unfairly between or among holders of Claims or Equity Interests.

7.    The Debtors believe that the classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code and applicable case law.  To determine whether a Claim is substantially similar to other Claims, the Debtors relied on various factors, including: the nature of the particular obligation giving rise to the Claim; *i.e.*, whether a Claim was secured or unsecured.

**B. Specifications of Unimpaired Classes and the Treatment of Impaired Classes (11 U.S.C. § 1123(a)(2) and (3))**

8.    Article IV of the Plan specifies the Unimpaired Classes of Claims and the treatment of each Impaired Class of Claims and Equity Interests, in accordance with sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, respectively.

4900-4488-1514, v. 1

**C. No Discrimination (11 U.S.C. § 1123(a)(4))**

9.      Article IV of the Plan provides the same treatment for each Allowed Claim or Equity Interest filed in a particular Class.

**D. Means for Implementation of the Plan (11 U.S.C. § 1123(a)(5))**

10.      The Plan provides "adequate means" for its implementation.  Article V of the Plan and various other provisions of the Plan set forth the means for implementation of the Plan.  Among other provisions in the Plan,

    a.      Article 4.4 provides for the cancellation of existing securities.

    b.      Article 5.1 vests all of Debtors' Property, rights, powers, and obligations with the Plan Administrator.  Article 1.78 provides for the appointment of Oliver P. Peoples as the Plan Administrator of the Post-Effective Debtors.

    c.      Article 5.2 provides for the consolidation of the Debtors on the Effective Date.

    d.      Article 5.4 permits the Post-Effective Date Debtors and Plan Administrator to take any action reasonably necessary to facilitate any transaction contemplated by the Plan.

    e.      Article 5.8 provides for the termination of the Debtors' existing directors and officers and dissolution of the Post-Effective Date Debtors.

    f.      Article 6.10 provides for the creation of an Administrative Claim Reserve for Administrative/Priority/Tax Claims.

    g.      Article 10.2 provides for the preservation of Retained Causes of Action of the Debtors.

**E. The Plan and Debtors, as Plan Proponents, Comply with Bankruptcy Code Bankruptcy Code (§ 1129(a)(1) and § 1129(a)(2))**

11.      The Plan comprises all elements of the Debtors' proposed liquidation. Every provision of the Plan complies with applicable provisions of the Bankruptcy Code. Every Claim

against and Interest in the Debtors is adequately and properly classified under the Plan. No provision of the Plan provides for relief beyond what is permissible under the Bankruptcy Code.

12.     As the Plan's proponents, the Debtors have, to the best of my knowledge and at all times, complied with all applicable provisions of the Bankruptcy Code and conducted itself in accordance with the Bankruptcy Code's requirements, including: (a) soliciting votes on the Plan in a manner consistent with Bankruptcy Code § 1126 and as required by the Court's *Order (I) Approved Disclosure Statement; (II) Approved Solicitation and Voting Procedures, Including (A) Fixed The Voting Record Date, (B) Approved The Solicitation Package and Procedure for Distribution, (C) Approved The Form of The Ballot and Solicitation Materials and Establishing Procedure for Voting, and (D) Approved Procedures for Vote Tabulation; (III) Scheduled a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granted Related Relief* (the "Disclosure Statement Approval Order") [D.I. 142]; (b) complying with all aspects of all other Court orders; and (c) managing the Debtors' financial affairs within the confines established by the Bankruptcy Code and Court orders.

### F. Plan is Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

13.     The Plan, which provides for the liquidation of the Debtors' remaining assets—essentially all litigation assets—for the benefit of its creditors, has been proposed in good faith and not by any means forbidden by law. The Debtors have made every effort to treat similarly-situated creditors equally and is fundamentally fair. Neither the Debtors nor the Plan places the burden of the Debtors' liquidation disproportionately on one Class of creditors or another, except to the extent that priorities among Classes of creditors dictated by the Bankruptcy Code required certain disproportionate treatment among creditors. Under all circumstances, although the Plan does not provide for payment in full of all Claims, the Plan does fairly achieve the Debtors' liquidation for

the maximum possible benefits of all creditors, a result consistent with the objections and purposes of chapter 11.

### G. Payment for Services of Costs and Expenses (11 U.S.C. § 1129(a)(4))

14.     All payments made or to be made under the Plan for services or for costs and expenses in, or in connection with, this case or the Plan have either been approved by this Court or are subject to this Court's approval as reasonable.

### H. Identity of Post-Confirmation Officers and Directors (11 U.S.C. § 1129(a)(5))

15.     The Plan identifies that I, Oliver P. Peoples, will act as the Plan Administrator from and after confirmation of the Plan and the Effective Date and that I was previously the Debtors' President and Chief Executive Officer and, therefore, am an insider.  The Debtors believe that my continued involvement in implementing the Plan and making distributions after the Effective Date, considering my extensive experience with the Debtors' business, serves the best interests of the Debtors' creditors and comports with public policy.  No other insider will be employed or retained by the Debtors or by me after the Effective Date.[4]

### I. No Rate Changes (11 U.S.C. § 1129(a)(6))

16.     This subsection requires governmental and regulatory approval of any rate change implemented under the terms of a plan.  I do not believe that this provision applies to the Debtors or the Plan because all the Debtors' business operations have ceased.

### J. Best Interests of Creditors (11 U.S.C. § 1129(a)(7))

17.     I have reviewed the *Declaration of Zhao Liu of The Rosner Law Group LLC Regarding The Solicitation of Votes and Tabulation of Ballots on The Amended Chapter 11 Plan of Liquidation of Yield10 Bioscience, Inc. and Its Affiliate Debtors* [D.I. 160] (the "Voting

---

[4] Except that all Claims asserted by Insiders and all Avoidance Actions against Insiders will be the sole province of the Independent Manager.

Tabulation"). With respect to each Class of Claims or Equity Interests under the Plan, each holder

of a Claim or Equity Interest in such Class has either accepted the Plan or will receive or retain

under the Plan on account of such Claim property of a value, as of the Effective Date, that is not

less than the amount that such holder would receive or retain if the Debtors were liquidated under

chapter 7 of the Bankruptcy Code.

### K.  Acceptance of an Impaired Class (11 U.S.C. § 1129(a)(8))

18.     Under the Plan, only Class 2 (General Unsecured Claims) is impaired and entitled

to vote to accept or reject the Plan.  As described in the Voting Tabulation, Class 2 has voted to

accept the Plan.  Administrative Claims (Unclassified), Priority Tax Claims (Unclassified), and

Class 1 (Other Priority Claims) are unimpaired and deemed to have accepted the Plan without

voting.  Classes 3 (Intercompany Claims) and 4 (Equity Interests) are deemed to have rejected the

Plan without voting and are, therefore, the only Classes rejecting the Plan.

### L.  Treatment of Certain Priority Claims (11 U.S.C. § 1129(a)(9))

19.     Under Bankruptcy Code § 1129(a)(9)(A), the Plan provides that each holder of an

Allowed Administrative Claim will be paid in full in Cash (i) in the ordinary course of business or

(ii) on the latest to occur of (A) the Effective Date (or as soon as reasonably practicable thereafter),

(B) the date such Claim becomes an Allowed Administrative Claim (or as soon as reasonably

practicable thereafter) and (C) such other date as may be agreed upon by the Plan Administrator

and the Holder of such Claim.  Allowed Professional Fee Claims will be paid in full in Cash when

they are Allowed, except as otherwise agreed to by the Holder. In accordance with Bankruptcy

Code § 1129(a)(9)(B), the Plan provides that each holder of an Allowed Other Priority Claim will

be paid in full in Cash as soon as reasonably practicable after the later of (i) the Effective Date and

(ii) the date such Claim becomes an Allowed Claim, or (iii) upon other agreed terms.  In

accordance with Bankruptcy Code § 1129(a)(9)(C), the Plan provides that each holder of an

Allowed Priority Tax Claim will be paid (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim, or (iii) paid upon other agreed terms, or (b) such lesser amount as the holder of an Allowed Priority Tax Claim and the Debtors might otherwise agree; provided however, that all payments on account of Allowed Priority Tax Claims are to be applied first to extinguish all tax debts that may result in personal liability of officers, directors, responsible persons, and/or employees of the Debtors (collectively, "Trust Fund Tax Debts"), then to any and all remaining outstanding tax debts that are not Trust Fund Tax Debts, then to any interest and/or penalties that have accrued on all tax debts, including Trust Fund Tax Debts, which is wholly consistent with the terms of Bankruptcy Code § 1129(a)(9)(C). Any holder of a Secured Tax Claim will receive under the Plan on account of that Claim cash payments in the same manner and over the same period as all other Allowed Priority Tax Claims, which is wholly consistent with the terms of Bankruptcy Code § 1129(a)(9)(D). I am unaware of any Secured Tax Claims.

### M. Acceptance of the Plan by at Least One Impaired Creditor (11 U.S.C. § 1129(a)(10))

20.    As stated above and as reflected in the Voting Tabulation, one impaired Class of Claims under the Plan has voted to accept the Plan. Accordingly, at least one impaired Class of Claims has voted to accept the Plan, determined without including any acceptance by any insider.

### N. Feasibility of the Plan (11 U.S.C. § 1129(a)(11))

21.    The Plan calls for the complete liquidation of the Debtors, thus satisfying the requirement of Bankruptcy Code § 1129(a)(11).

**O.  Payment of Fees (11 U.S.C. § 1129(a)(12))**

22.     I believe the Debtors' estates are current with respect to all fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6).  If any such fees have not been paid, the Plan provides for the payment of all such fees on the Effective Date or as they come due after that time.

**P.  Bankruptcy Code 11 U.S.C. §§ 1129(a)(13)-(16)**

23.     These subsections do not apply to the Debtors or the Plan.  The Debtors have never been a party to a collective bargaining agreement, the Debtors are not required to pay domestic support obligations, the Debtors are not an "individual," and there are no "provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust" that apply to the Debtors since the Debtors are commercial entities.

**Q.  Fair and Equitable Treatment of Non-Accepting
     Classes; No Unfair Discrimination (11 U.S.C. § 1129(b))**

24.     As demonstrated by the Voting Tabulation and as described above, the Plan meets all requirements of Bankruptcy Code § 1129(a) for confirmation.  Class 3 (Intercompany Claims) and Class 4 (Equity Interests) are deemed to reject the Plan without voting because the holders of interests in that Class do not receive or retain any property on account of their interests.  The Debtors request that the Court confirm the Plan under Bankruptcy Code § 1129(b)(1) because the Plan does not discriminate unfairly and is fair and equitable to Classes 3 and 4.  Under Bankruptcy Code § 1129(b)(2)(C)(ii), the Plan is fair and equitable with respect to Classes 3 and Class 4(a class of interests) because there exist no holders of any interest junior to those interests included in Class 4 and, therefore, no holder of an interest junior to those interests in Class 4 receive or retain any property under the plan on account of such junior interest.

**R.  One Plan on File 11 U.S.C. § 1129(c)**

25.      § 1129(c) does not apply to the Plan or these cases because there is only one joint plan on file.

**S.  Principal Purpose of the Plan is Not Tax Avoidance or**
**Application of Section 5 of the Securities Act (11 U.S.C. § 1129(d))**

26.      To the best of my knowledge as informed by counsel for the Debtors, the principal purpose of the Plan is to effect the liquidation of the Debtors' assets, not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act.

**II.  Executory Contracts and Unexpired Leases**

27.      Article VIII of the Plan provides for the rejection of all executory contracts (the "Contracts") to which the Debtors are a party except as otherwise provided in the Plan or Plan Supplement.  For all Contracts, the Debtors have determined in the exercise of their business judgment that the Contracts constitute a burden on the Debtors' estates because they are unnecessary to the Debtors' business, which has ceased in all respects.

28.      I believe that confirmation of the Plan is appropriate, is in the best interests of all parties-in-interest and should, therefore, be approved.


Dated:  October 9, 2025

                                              */s/ Oliver P. Peoples*
                                              Oliver P. Peoples

10